Bobby R. LEWIS, et al., Plaintiffs,

v.

**AMERICAN EXPLORATION COMPANY, et al., Defendants.**

**No. CIV.A. H–97–2262.**

United States District Court, S.D. Texas, Houston Division.

April 13, 1998.

---

## MEMORANDUM AND OPINION

ROSENTHAL, District Judge.

In this diversity case, plaintiffs Bobby R. Lewis and Reather Lee Lewis (collectively, "the Lewises") have sued two lawyers, D. Mitchell McFarland ("McFarland") and Andy Taylor ("Taylor"), and the law firm with whom they practice, Liddell, Sapp, Zivley, Hill & LaBoon, L.L.P. (collectively, "Liddell Sapp"). The Lewises allege that Liddell Sapp is liable for tort damages for legal work that the Liddell Sapp lawyers did in defending a client that the Lewises sued in Texas state court. The Lewises allege that the Liddell Sapp lawyers and their client failed to produce discoverable documents and information, resulting in the dismissal of the state court case.

Liddell Sapp has moved for summary judgment on the ground that under Texas law, the Lewises, unsuccessful litigants in a prior Texas lawsuit, have no right to recover damages against opposing counsel for litigation conduct performed as part of representing their own client in the same prior case.

This court has carefully reviewed the pleadings, the motion, the parties' submissions, and the applicable law. Based on that review, this court concludes that as a matter of Texas law, Liddell Sapp cannot be liable to the Lewises for the wrongful litigation conduct alleged. The motion for summary judgment is GRANTED. This case is dismissed.

## I. Background

Bobby Lewis was injured in 1990 when a large oil rig hit the truck in which Lewis was a passenger. Lewis worked for an oil well service company. The accident occurred on premises owned by American Exploration Company. Lewis and his wife sued American Exploration Company and related companies,[1] (collectively, "American Exploration"), in Texas state court in 1992 on a premises liability negligence theory, alleging a breach of the duty owed to a business invitee. Liddell Sapp represented American Exploration in that lawsuit.

---

1. The American Exploration Company related entities included AMEROX Acquisition Corporation and American Production Partnership VIII, Ltd.

The Lewises filed discovery requests, including a request for production of any documents showing that American Exploration instructed business invitees how to access job sites on its premises. American Exploration denied the existence of such documents. An American Exploration employee gave a deposition in which he answered questions about such instructions; the employee denied that there were any such instructions, oral or written. American Exploration obtained a summary judgment dismissing the Lewises' case.

Another person injured in the same accident filed a similar suit. The plaintiffs in that case also conducted discovery. That discovery resulted in the production of documents showing that American Exploration gave instructions to Bobby Lewis's group as to what route to take to the job site. That case survived summary judgment and was settled.

The Lewises sued American Exploration and Liddell Sapp in federal district court in the Eastern District of Texas. The case was transferred to this court. The Lewises have now settled with American Exploration. In their first amended complaint, the Lewises allege that Liddell Sapp and the two lawyers are liable for fraud and conspiracy to defraud by providing false responses to discovery requests, assisting their client in providing false deposition testimony, and withholding properly requested documents known to exist.

Liddell Sapp has submitted an affidavit from the defendant lawyer, Taylor, in support of the motion for summary judgment. The affidavit states that American Exploration and Liddell Sapp opposed the Lewises in the state court action and that Liddell Sapp has never represented the Lewises. (Docket Entry No. 26, Ex. 1). Liddell Sapp asserts that as a matter of Texas law, they cannot be liable to a party in a Texas state court lawsuit for allegedly wrongful litigation conduct undertaken in the discharge of their duties as attorneys to an opposing party in that lawsuit.

## II. The Applicable Legal Standards

### A. The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. Under FED. R. CIV. P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *See id.*

When the moving party has met its Rule 56(c) burden, the nonmovant cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. *See Little*, 37 F.3d at 1075. The nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *See id.* (citing *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553–54).

In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). "Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Little*, 37 F.3d at 1075 (quoting *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552) (alteration in original).

## B. *Erie* and the Applicable Texas Law

 As a federal court sitting in a diversity case, this court must apply the law as would a Texas court, by applying existing Texas law or by predicting how the Texas Supreme Court would decide the legal issue. *See Taco Bell Corp. v. Cracken,* 939 F.Supp. 528, 531 (N.D.Tex.1996). Where there is no definitive Texas Supreme Court decision on point, the federal court looks to decisions of the state's intermediate appellate courts. *See id.; see also Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). Such decisions are controlling on questions of state law unless there is a strong indication that the Texas Supreme Court would reach a different result. *See Exxon Co., U.S.A. v. Banque De Paris Et Des Pays–Bas,* 889 F.2d 674, 676 (5th Cir.1989); *cf. FDIC v. Abraham,* 137 F.3d 264, 268 (5th Cir.1998) ("[W]e are bound by an intermediate state appellate court decision only when we remain unconvinced by other ... data that the highest court of the state would decide otherwise.") (internal citations and quotations omitted).

 In two recent cases, Texas appellate courts have held that neither a party to a lawsuit nor his lawyer has a right of recovery against the opposing attorney arising from conduct engaged in as part of that attorney's duties in representing his client in that lawsuit. In both cases, the Texas Supreme Court denied applications for writ of error, indicating that although the Supreme Court was "not satisfied that the opinion of the court of appeals ha[d] correctly declared the law in all respects, [it] determine[d] that the petition present[ed] no error that requires reversal or that is of such importance to the jurisprudence of the state as to require correction ...." TEX. R. APP. P. 56.1(b)(1) (replacing former TEX. R. APP. P. 133(a)).

In *Bradt v. West,* 892 S.W.2d 56 (Tex. App.—Houston [1st Dist.] 1994, writ denied), an attorney and his professional corporation sued numerous defendants, including opposing attorneys, for conduct that resulted in contempt sanctions during the trial of a prior lawsuit. The plaintiffs alleged malicious prosecution, conspiracy, intentional infliction of emotional distress, and tortious interference with contract relations. The court of appeals affirmed summary judgment on the ground that the plaintiffs had no right, as a matter of law, to recover tort damages for the attorneys' conduct in the underlying lawsuit. The court held that an attorney has no right of recovery against another attorney for conduct the second attorney engaged in as part of the discharge of his duties in representing a party in a lawsuit in which the first attorney also represented a party. *Id.* at 71–72. The Texas appellate court reasoned that an attorney's knowledge that he may be sued by the other side's attorney would favor tentative rather than zealous representation of the client, contrary to professional ideals and public expectations. *Id.* at 72. Because such a policy "would dilute the vigor with which Texas attorneys represent their clients," it would "not be in the best interests of justice." *Id.*

The court noted that the appropriate mechanism for enforcing attorney misconduct during litigation is in the form of procedural rules and statutory remedies.

> This [holding] is not to say, however, that an attorney cannot be punished for conduct he engaged in as part of the discharge of his duties in representing a party in a lawsuit when that conduct is wrongful. The law provides for the punishment of such acts. *See, e.g.,* TEX. R. CIV. P. 13 (power to punish attorney for filing improper pleadings, motions, and 'other papers'); TEX. R. CIV. P. 215 (power to punish attorney for abusing discovery); TEX. GOV'T CODE ANN. § 21.002 (Vernon 1988) (power to punish attorney for contempt of court). But the law does not provide a cause of action to the attorney on the other side for the performance of such acts.

892 S.W.2d at 72. The court articulated a rule that "focuses on the kind of conduct engaged in, not on whether the conduct was meritorious in the context of the underlying lawsuit." *Id.* Under this rule, the dispositive question is whether the attorney's conduct was part of the discharge of his duties in representing a party in a lawsuit. *Id.* Even meritless conduct is not actionable when it comes "in the discharge of [the attorney's]

duties in representing a party in a lawsuit .... " *Id.* at 73.

A federal district court applied *Bradt* to dismiss claims by a party to a state court lawsuit against opposing counsel in that lawsuit. In *Taco Bell Corp. v. Cracken*, 939 F.Supp. 528 (N.D.Tex.1996), Taco Bell, a defendant in a state court wrongful death case, lost a venue battle and subsequently settled the case. Taco Bell then sued the lawyer for the state court plaintiff, along with one defendant and his lawyer, alleging that the legal work done to obtain venue in a particular forum amounted to fraud and conspiracy to defraud. The federal district court held as follows:

> It is ... clear that Taco Bell—a party to a state-court lawsuit—is seeking to hold defendants liable for acts or omissions undertaken as part of the discharge of their duties as attorneys to opposing parties in the same lawsuit. Because, under Texas law, it is the *kind*—not the *nature*—of conduct that is controlling, Taco Bell's claims must be dismissed.

> Nor would it avail Taco Bell to assert that because defendants engaged in fraud and civil conspiracy, such acts cannot be classified as proper conduct for a lawyer representing a client. In *Bradt* the court affirmed a summary judgment that dismissed claims of a similar nature, rejecting the proposition that they did not address protected conduct. *See Bradt,* 892 S.W.2d at 65, 76 (holding claims for conspiracy to maliciously prosecute, malicious prosecution, intentional infliction of emotional distress, tortious interference with contractual relations, liability under the Texas Tort Claims Act, and abuse of process were barred as a matter of law).

939 F.Supp. at 532–33; *see also McCampbell v. KPMG Peat Marwick,* 982 F.Supp. 445, 448 (N.D.Tex.1997) (holding that a plaintiff could not recover against an attorney representing an opposing party in a previous suit based on the attorney's allegedly false statements in an affidavit and motion for new trial filed in that suit and noting that characterizing the conduct as fraudulent did not provide a basis for recovery against the attorney).

The court in *Taco Bell* found that the *Bradt* court's reasoning extended with "at least equal force" to the liability of an attorney to the opposing party in a prior case:

> Although *Bradt* addresses the liability *vel non* of one attorney to an opposing *attorney* in the same lawsuit, its reasoning applies with at least equal force to the liability of an attorney to the opposing *party.* The knowledge of an attorney for one party that he may be sued by the other party would exacerbate the risk of tentative representation to at least the same degree as would knowledge that opposing counsel could sue him. And it arguably could have a greater chilling effect, since a lawyer may reasonably think it more likely that a private party, rather than a fellow professional, would seek to retaliate in this manner. The court therefore predicts that Texas would apply the principles of *Bradt* to bar claims by one party against the opposing party's attorney. *Cf. Martin v. Trevino,* 578 S.W.2d 763, 771 (Tex.Civ.App. 1978, writ ref'd n.r.e.) (noting that cases generally hold that attorney for one party is exempt from liability to a party other than his client for damages resulting from the performance of services that the attorney engages in and that require the office, professional training, skill, and authority of an attorney).

939 F.Supp. at 532.

A second Texas appellate court has reached a similar result. In *Renfroe v. Jones & Associates,* 947 S.W.2d 285 (Tex.App.— Fort Worth 1997, writ denied), a plaintiff appealed from a grant of summary judgment dismissing an action for wrongful garnishment. The plaintiff, Renfroe, alleged that the defendant law firm, Jones & Associates, applied for a writ of garnishment against her based on a false affidavit signed by Jones & Associate's client. The Texas court of appeals held as follows:

> An attorney's duties that arise from the attorney-client relationship are owed only to the client, not to third persons, such as adverse parties. They have not retained the attorney and the attorney has not rendered them any services. No privity of contract exists between them and the at-

torney. They have no right of action against the attorney for any injuries they suffer because of the attorney's fault in performing duties owed only to the client. Texas law has long authorized attorneys to practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages. An attorney may assert any of his client's rights without being personally liable for damages to the opposing party.

. . . .

This rule focuses on the type of conduct in which the attorney engages rather than on whether the conduct was meritorious in the context of the underlying lawsuit. Accordingly, the present case turns on whether the attorney's conduct was part of discharging his duties in representing his client. If the conduct is within this context, it is not actionable even if it is meritless.

947 S.W.2d at 287–88 (internal citations and quotations omitted).

The *Renfroe* court took the same approach as the *Taco Bell* court in noting that although *Bradt* specifically addressed the liability of one attorney to an opposing attorney, "its reasoning applies with equal force to the liability of an attorney to the opposing party. Under Texas law, attorneys cannot be held liable for wrongful litigation conduct." 947 S.W.2d at 288 (internal citations omitted). In *Renfroe*, the court affirmed the summary judgment for the law firm on the ground that the allegedly wrongful actions in preparing and filing the application for the writ of garnishment were taken by attorneys representing their clients in the underlying action, and within the context of discharging their duty to represent their clients. *Id.; see also Ross v. Arkwright Mut. Ins. Co.*, 933 S.W.2d 302, 305 (Tex.App.—Houston [14th Dist.] 1996, writ denied).

One recently decided Texas case contains contrary language. In *Querner v. Rindfuss*, 966 S.W.2d 661 (Tex.App.—San Antonio 1998), the court of appeals reversed a summary judgment dismissing claims for fraud, conspiracy, conversion, unjust enrichment, breach of fiduciary duty, and other causes of action against an attorney who had represented an estate in probate litigation. The plaintiffs were beneficiaries of a will; the defendant was an attorney retained to assist in the probate of the estate. The beneficiaries were each represented by separate attorneys during the probate litigation. The probate court found that the executrix for the estate had misappropriated funds and engaged in fraud and other bad acts. The beneficiaries then sued the attorney for the estate.

The court of appeals found that there was an issue of disputed fact material to determining whether the attorney engaged in fraud and conspiracy to convert the estate's assets with the executrix. The disputed fact was a conflict between the attorney's testimony that he delivered original checks for copying and made them available for inspection; testimony from an employee of a copy business that no original checks were delivered; and an affidavit from a beneficiary that he asked for original checks which were not provided. *Id.* at 669–670. In reaching this result, the court of appeals rejected what it termed a "global privilege" immunizing all lawyers for any action taken in the litigation context. The court concluded that "[e]ach claim must be considered in light of the actions shown to have been taken by [counsel] in order to determine whether he can be held liable for such actions. If an attorney actively engages in fraudulent conduct in furtherance of some conspiracy or otherwise, the attorney can be held liable." *Id.* at 666.

The *Querner* court cited *Likover v. Sunflower Terrace II, Ltd.*, 696 S.W.2d 468, 472 (Tex.App.—Houston [1st Dist.] 1985, no writ). The *Likover* court, analyzing a claim that a lawyer had assisted his client in devising a fraudulent business scheme, stated as follows:

A lawyer is authorized to practice his profession, to advise his clients, and to interpose any defense or supposed defense, without making himself liable for damages.

However, an attorney is liable if he knowingly commits a fraudulent act that injures a third person, or if he knowingly enters into a conspiracy to defraud a third person.

696 S.W.2d at 472 (internal citations omitted); *see also Kirby v.. Cruce,* 688 S.W.2d 161, 164–65 (Tex.App.—Dallas 1985, writ ref'd n.r.e.); *Bourland v. State,* 528 S.W.2d 350, 357 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.).

*Likover,* unlike the later decisions in *Bradt* and *Renfroe,* involves allegations that the lawyer sued assisted clients in fraudulent business schemes and did not involve actions taken in the context of litigation. *Querner* recognizes a "broad litigation privilege defense" necessary to "enable the attorney to vigorously represent his or her client," but rejects an "absolute privilege for every act or communication of an attorney simply because it is part of the litigation process." *Querner,* at 663. *Querner* does not analyze *Bradt, Renfroe,* or the writ history of those cases.

*Querner* is distinguishable from *Bradt* and *Renfroe,* and from this case. In *Querner,* the court found that the estate's attorney recognized that he owed duties to the beneficiaries. The attorney had told the beneficiaries that he recognized an obligation to keep them fully apprised as to the executrix's positions. The attorney also made accountings "in keeping with that representation." *Querner,* 966 S.W.2d 661 at 667. The court found that the attorney's statements to the beneficiaries that he owed them certain duties might create privity and a fiduciary relationship and could provide a basis for the beneficiaries to sue the attorney hired to advise the executrix in administering the estate. By contrast, in this case, as in *Bradt, Taco Bell,* and *Renfroe,* the defendant attorneys owed no duty to the opposing party. In *Querner,* the defendant attorney was alleged to have assisted in converting assets; in *Bradt, Taco Bell, Renfroe,* and in this case, the defendant attorneys' alleged fraud is the legal work they did to represent their clients in litigation.

In *Querner,* the issue was not whether an attorney could be liable to opposing parties, to whom he owed no duties, for actions taken in the course of discharging duties owed only to his client in litigation. In contrast, the issue was whether an attorney for an estate was liable to beneficiaries of that estate, when the attorney had held himself out as owing duties to those beneficiaries, might be in privity or in a fiduciary relationship to them, and might have participated in converting assets. In *Bradt, Taco Bell, Renfroe,* and the cases on which they rely, the question was whether an attorney can be liable to an opposing party in a lawsuit, to whom the attorney as a matter of law owed no duty, for legal work representing the client that discharged duties owed exclusively to his own client in that lawsuit. To that question, Texas law has answered that there can be no such liability. *Renfroe,* 947 S.W.2d at 287–88; *Bradt,* 892 S.W.2d at 71–72. Characterizing the attorney's actions in defending his client as fraudulent or as part of a conspiracy to defraud does not change the rule or provide a basis for recovery. *Taco Bell,* 939 F.Supp. at 533.

■ A federal court is not required mechanically to follow the most recent intermediate state court holding. Rather, the court should determine, based on all relevant factors, how the highest court of the state would decide the question. *See Daigle v. Continental Oil Co.,* 277 F.Supp. 875, 884 (W.D.La. 1967). *Querner* is distinguishable from the instant case; it is not the most recent expression of state law applicable to the facts involved here. *Cf. Clouse v. Boise Cascade Corp.,* 955 F.Supp. 670, 672–73 (W.D.La.), *aff'd,* 131 F.3d 140 (5th Cir.1997). In *Taco Bell,* a federal district court found that *Bradt* expresses Texas law on claims similar to the ones asserted by the Lewises. *Cf. Eason v. Weaver,* 557 F.2d 1202, 1206 (5th Cir.1977) (noting that when the highest court of the state has not spoken on the issue, the Fifth Circuit gives substantial weight to the district court's assessment of the local law). This court agrees.

## C. Texas Law and the Present Case

■ In this case, the Lewises challenge Liddell Sapp's conduct in preparing discovery responses on its client's behalf and in producing a client representative for a deposition in the Lewises' state court case. All the claims rest on the allegation that the Liddell Sapp lawyers engaged in improper discovery when its client denied the existence of certain documents and facts. The Lew-

ises, unsuccessful state court plaintiffs, are seeking to hold Liddell Sapp and two of its lawyers liable for their work in discovery, work undertaken as part of the discharge of their duties as attorneys defending the party that the Lewises had sued in the same lawsuit. Taking the Lewises' summary judgment evidence as true for the purpose of this motion, the only acts and omissions alleged are acts undertaken by lawyers representing a client in responding to discovery requests from an opposing party. The type of conduct in which the attorneys allegedly engaged is without dispute part of discharging their duties in representing their client. Such conduct does not make the attorneys liable in tort damages to the opposing party. Labeling such conduct as fraudulent or as part of a conspiracy to defraud does not subject the attorneys to liability for tort damages to the opposing party under Texas law.

## III. Conclusion

This court holds that Liddell Sapp cannot as a matter of law be held liable to the Lewises for the conduct challenged in this case.

### FINAL JUDGMENT

In accordance with the court's Memorandum and Opinion of even date, this action is DISMISSED with PREJUDICE. Each party is to bear its own costs.

THIS IS A FINAL JUDGMENT.