**THE BUTLER WELDMENTS CORPO-RATION and Bryan Construction Company, Appellants,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, et al., Appellees.**

No. 03–98–00591–CV.

Court of Appeals of Texas, Austin.

Oct. 7, 1999.

John L. Malesovas, Malesovas & Martin, L.L.P., Waco, for Appellants.

J. Hampton Skelton, Skelton & Woody, Austin, John M. Skrhak, Looper, Reed, Mark & McGraw, Dallas, for Appellees.

Before Justices JONES, KIDD and PATTERSON.

MACK KIDD, Justice.

Appellants Butler Weldments Corporation ("Butler") and Bryan Construction Company ("Bryan") sued appellees, a defendant class of workers' compensation insurance carriers [1] (the "Insurers") including Liberty Mutual Insurance Company ("Liberty") and Highlands Insurance Company ("Highlands") on several grounds, alleging that the Insurers had wrongfully withheld monies due them for years 1993 and 1994 and demanding that the Insurers pay them interest on those retained amounts. The sole issue presented on appeal is whether the trial court erred in

---

1. The appendix to this opinion lists the appellees individually.

granting the Insurers' special exceptions to Butler and Bryan's pleadings and in dismissing the claims with prejudice after ruling that Butler and Bryan had failed to plead a cognizable cause of action. Finding no error, we will affirm the district court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Under the Texas Workers' Compensation Act, an employer may obtain workers' compensation insurance coverage through a licensed insurance company or, in certain instances, through self-insurance. *See* Tex. Labor Code Ann. § 406.003 (West 1996). Many employers who are unable to purchase insurance in the private voluntary market also are ineligible to self-insure. Since 1953, the Texas legislature has prescribed a variety of "residual" or "involuntary" market mechanisms to afford coverage to these "rejected risks," i.e., those employers unable to obtain workers' compensation insurance through ordinary methods in the voluntary market. *See* Act of April 9, 1953, 53d Leg., R.S., ch. 279, 1953 Tex. Gen. Laws 716 (Tex. Ins. Code Ann. art. 5.76–1, *since repealed by* Act of Nov. 21, 1989, 71st Leg., 2d C.S., ch. 1, § 16.01, 1989 Tex. Gen. Laws 114). Until the 1989 legislative session, this coverage was provided by the Texas Workers' Compensation Assigned Risk Pool (the "Pool"). *Id.* In 1989, the legislature replaced the Pool with the Texas Workers' Compensation Insurance Facility [2] (the "Facility"). *See* Act of Nov. 21, 1989, 71st Leg., 2d C.S., ch. 1, § 16.01, 1989 Tex. Gen. Laws 114 (*amended by* Act of Aug. 22, 1991, 72d Leg., 2d C.S., ch.12, § 18.01, 1991 Tex. Gen. Laws 337, eff. Jan. 1 1994, *currently codified at* Tex. Ins.Code Ann. art. 5.76–3 (West Supp.1999)). All insurance companies licensed to write workers'

compensation insurance in Texas were required to join the Facility. As members, the insurance companies were made financially responsible for the Facility's operational deficits and surpluses each year. *See* Tex. Ins.Code Ann. art. 5.76–2, § 1.01 (amended 1991) (*currently codified at* Tex. Ins.Code Ann. art. 5.76–3 (West Supp. 1999)). For any year in which the Facility operated at a deficit, the deficit amount was to be assessed against all Facility member insurance carriers; conversely, for any year in which the Facility operated at a surplus, the surplus amount was to be rebated among all Facility members.

Also in 1989, the legislature enacted a provision whereby the members of the Facility would pass a portion of the Facility's annual deficits or surpluses on to their insureds who had purchased "retrospectively-rated" policies [3] of workers' compensation insurance in the voluntary market for that particular year. *See* Act of Nov. 21, 1989, 71st Leg., 2d C.S., ch.1, § 16.01, 1989 Tex. Gen. Laws 114 (amended 1991). In order to provide a means of calculating the amount to be assessed against or paid to each eligible policyholder, the Texas Department of Insurance (the "Department") was given the duty of setting the appropriate "pass-through allowance" for each year. *See* Tex. Ins.Code Ann. art. 5.76–2, § 4.04(d),(e) (amended 1991). This allowance was to be based upon the premium paid by the retrospectively-rated policyholder as a proportion of the total voluntary writings by the insurance carriers for the calendar year. *See id.*

The material facts in the case before us are undisputed. Butler purchased a workers' compensation insurance policy from Liberty to cover its Texas employees for the period beginning January 1, 1993, and ending December 31, 1993. Bryan pur-

---

**2.** The Facility has since been replaced by the Texas Workers' Compensation Insurance Fund, a governmental corporation that now provides workers' compensation coverage to employers in the residual market. *See* Tex. Ins.Code Ann. art. 5.76–4 (West Supp.1999).

**3.** Retrospectively-rated insurance policies have a variable component of premium that is adjusted annually to reflect that particular insured's actual losses in past years.

chased a workers' compensation insurance policy from Highlands to cover its Texas employees for the period beginning June 30, 1993, and ending June 30, 1994. Both policies were written on a retrospectively-rated basis. Both Liberty and Highlands were Facility members.

In 1991, the Facility produced a surplus for the first time in nearly thirty-five years. A significant surplus was also generated in 1992, 1993, and 1994. At some point, certain policyholders petitioned the Department to adopt a rule compelling the Insurers to give each retrospectively-rated policyholder a portion of the surplus in accordance with article 5.76–2, section 4.04(d) and (e) of the Insurance Code. *See* Tex. Ins.Code Ann. art. 5.76–2, § 4.04(d), (e) (amended 1991).[4] The Department commenced rulemaking proceedings pursuant to these requests on March 10, 1997, and invited participation by all interested parties, including Butler, Bryan, and all other retrospectively-rated policyholders. Notwithstanding the ongoing rulemaking proceedings, Butler and Bryan filed suit in Milam County on March 31, 1997, against Liberty, Highlands, and the other members of the Facility.

In their suit against the Insurers, Butler and Bryan sought, both in their individual capacities and on behalf of a proposed class of policyholders, judgment for their share of the 1993 and 1994 surpluses. In July 1997, the Department issued a rule establishing the appropriate pass-through allowances for each of the surplus years and ordering the Insurers to remit a desig-nated portion of the 1993 and 1994 surpluses to Butler, Bryan, and the other eligible policyholders within 180 days of the rule's effective date. Despite the protests of Butler, Bryan, and the other policyholders, the Department refused to order as part of the distribution the payment of interest that had accrued on the surplus while the funds were in the possession of the Insurers.

After the Insurers complied with the Department's order to disburse the surplus, Butler and Bryan accepted the surplus rebates and abandoned their claims for the pass-through amounts. However, they amended their petition to seek recovery of the interest that had accrued on the surplus amounts from the time the Facility rebated the surpluses to the Insurers until the Insurers disbursed the surplus to the policyholders pursuant to the Department's 1997 order. Upon agreement of all the parties, the cause was transferred to Travis County where it was consolidated with a related suit and then later severed. Liberty, Highlands, and the Insurers filed special exceptions asking the court to strike Butler and Bryan's pleadings for failure to state a cause of action. The court granted the special exceptions and ordered Butler and Bryan to replead. After Butler and Bryan amended their pleadings, Liberty, Highlands, and the Insurers once more specially excepted to each of Butler and Bryan's causes of action.[5] Again, the district court granted the special exceptions, and this time dismissed all

---

4. It is important to note that for the thirty-five years prior to 1991, the Pool had always operated at a deficit. Whereas the 1991 rules provided a mechanism whereby the Facility could "pass-through" Facility deficits, the rules at that time did not address the procedure to follow in the event the Facility ever generated a surplus. Only in 1997, after the Department realized for the first time that there was in fact a surplus during years 1991, 1992, 1993, and 1994, were the rules amended to address how to pass-through such unanticipated surpluses.

5. Butler and Bryan's second amended petition alleged unjust enrichment; money had and received; constructive trust; conversion; conspiracy to breach a contract, fiduciary duties, and the duties of good faith and fair dealing; tortious interference; usury; antitrust violations of section 15.05(a) of the Texas Business and Commerce Code. *See* Tex. Bus. Com.Code Ann. § 15.05(a) (West Supp. 1999); and violation of article 21.21, section 4(1) the Texas Insurance Code. *See* Tex. Ins. Code Ann. art. 21.21, § 4(1) (West 1987). The sole basis for the damages sought, however, was the accrued interest on the 1993 and 1994 pass-through amounts.

of Butler and Bryan's claims with prejudice in its final judgment in September 1998. Butler and Bryan now appeal the court's final judgment.

## STANDARD OF REVIEW

By way of their special exceptions, the Insurers sought dismissal of the suit on the grounds that Butler and Bryan failed to state a cognizable cause of action under Texas law. A special exception is a proper method to use to determine whether a plaintiff has pleaded a cause of action. *See Intratex Gas Co. v. Beeson*, 960 S.W.2d 389, 394 (Tex.App.—Houston [1st Dist.] 1998, pet. denied); *see also Moseley v. Hernandez*, 797 S.W.2d 240, 242 (Tex. App.—Corpus Christi 1990, no writ). When special exceptions are sustained, the pleader may either amend the petition or refuse to amend and challenge the ruling on appeal. *See Detenbeck v. Koester*, 886 S.W.2d 477, 479 (Tex.App.—Houston [1st Dist.] 1994, no writ). Here, the trial court provided Butler and Bryan two weeks leave to amend their petition. Consequently, Butler and Bryan were afforded adequate opportunity to correct any deficiencies that may have existed in their pleadings. *See Albright v. Texas Dep't of Human Servs.*, 859 S.W.2d 575, 582 (Tex. App.—Houston [1st Dist.] 1993, no writ) (citing *Texas Dep't of Corrections v. Herring*, 513 S.W.2d 6, 8 (Tex.1974)) (holding that only after a party has been given an opportunity to amend after special exceptions have been sustained may a case be dismissed for failure to state a cause of action).

When a trial court dismisses a case upon special exceptions for failure to state a cause of action, we review that issue of law using a *de novo* standard of review. *See Mayberry v. Texas Dep't of Agric.*, 948 S.W.2d 312, 314 (Tex.App.—Austin 1997, pet. denied) (citing *Detenbeck v. Koester*, 886 S.W.2d at 479); *see also Sanchez v. Huntsville Indep. Sch. Dist.*, 844 S.W.2d 286, 288 (Tex.App.—Houston [1st Dist.] 1992, no writ). When reviewing

a dismissal based upon special exceptions, we also must accept as true all material factual allegations and all factual statements reasonably inferred from the allegations set forth in the respondent's pleadings. *See Sorokolit v. Rhodes*, 889 S.W.2d 239, 240 (Tex.1994). If a pleading does not state a cause of action, the trial court does not err in dismissing the entire case. *See Holt v. Reprod. Servs., Inc.*, 946 S.W.2d 602, 605 (Tex.App.—Corpus Christi 1997, writ denied); *Cole v. Hall*, 864 S.W.2d 563, 566 (Tex.App.—Dallas 1993, writ denied).

## DISCUSSION

We do not decide today whether an insurance company would be liable in the event it were to intentionally violate the Department's order to disburse pass-through allowances to its eligible insureds pursuant to article 5.76–2, section 4.04 of the Texas Insurance Code. *See* Tex. Ins. Code Ann. art. 5.76–2, § 4.04 (amended 1991). Rather, the issue before us is whether a cause of action exists against an insurance company for delaying payment of Facility surplus amounts to eligible policyholders until the Department sets the appropriate pass-through allowance to be paid for each calendar year as authorized by statute. *See* Tex. Ins.Code Ann. art. 5.76–2, § 4.04(d),(e) (amended 1991).

Each cause of action Butler and Bryan assert is premised upon the contention that the policyholders were immediately and automatically vested with a right to a discernable share of the Facility's annual surpluses at the moment the Insurers received it and no later. Although Butler and Bryan's pleadings allege a variety of causes of action, they essentially claim a right to the interest that accrued on their pass-through allowances from the time the surplus was first rebated to the Insurers until the point at which the Department entered its order and the allowances were finally rebated to Butler, Bryan, and the other policyholders. After considering Butler and Bryan's arguments and reviewing the plain meaning of the statute and

established rules of statutory construction, we come to the opposite conclusion.

■ We first note that it is undisputed that Liberty, Highlands, and the other Facility insurance carriers promptly complied with the Department's July 1997 order to remit a certain amount of the Facility surplus to each retrospectively-rated policyholder. The parties instead disagree as to whether the Insurers should have forwarded the surplus to their eligible policyholders *immediately* upon receiving it from the Facility, long before 1997, regardless of whether the Department had calculated the *appropriate* "residual market factor"[6] ("RMF") for the years in question. Butler and Bryan contend that the Insurance Code granted them a property right to an objectively-determinable pass-through allowance for each surplus year and that this right vested immediately upon the Insurers' receipt of any surplus from the Facility, regardless of if and when the Department established the appropriate pass-through allowance as directed by the legislature. *See* Tex. Ins.Code Ann. art. 5.76–2, § 4.04(d),(e) (amended 1991). As we will explain, this reading misinterprets the statute.

Both parties acknowledge that, to the extent that any right to a surplus might exist, such a right is established solely by statute. The statutory provision at issue here unambiguously charges the Board of the Department of Insurance (the "Board") with the duty of establishing the *appropriate* pass-through allowance for each year in which the Facility operated at a surplus or a deficit:

> For assessments or rebates made under Subsection (c) of this section, *the board shall establish* an *appropriate* pass-through allowance so that each retrospectively rated risk written during the calendar year shall pay a proportion of the assessment or receive a propor-

tion of the rebate. The pass-through allowance shall be based on the premium paid by the retrospectively rated risk as a proportion of the total voluntary writings by the insurance carrier or the state fund in the calendar year.

Tex. Ins.Code Ann. art. 5.76–2, § 4.04(e) (amended 1991) (emphasis added).

The statute's plain language indicates that Butler and Bryan possessed no vested, enforceable property right to any surplus amount prior to the Department's 1997 order prescribing the pass-through amounts for years 1993 and 1994. Further, the statute unambiguously dictates that *the Board*, not the Insurers, shall establish an *appropriate* pass-through allowance. Until the Board acted on behalf of the Department, the statute imposed no duty upon the Insurers to pay anything to their policyholders. The Insurers could not be compelled to pay because the pass-through allowance had not yet been set. No entitlement existed. The policyholders' interest in the pass-through allowances was only an expectation based upon the anticipated continuance of the present laws, the existence of a Facility surplus, and the Department's expected promulgation of the *appropriate* allowances. Consequently, the policyholders' claim to the surpluses was not a ripened property right until the Department's 1997 rule and order. *See Grocers Supply Co. v. Sharp*, 978 S.W.2d 638, 643 (Tex.App.—Austin 1998, pet. denied) (*citing Ex Parte Abell*, 613 S.W.2d 255, 261 (Tex.1981) (holding a right is not vested unless it is something more than mere expectation based upon continuance of present general laws)).

Although the policyholders can look forward to the Department carrying out its duty of calculating the pass-through allowance as directed by statute, they cannot forego the prerequisite action by the Department. The policyholders could have

---

**6.** The residual market factor ("RMF") was the mechanism the Department used to calculate the pass-through allowances. The RMF was expressed as a percentage factor that was multiplied by the premium for a particular policyholder in the applicable year in order to yield the appropriate pass-through amount for that insured.

opted to compel the Department to perform its statutory duty to calculate the pass-through allowance sometime prior to 1997. But absent any administrative action by the Department, there is no statutory or common-law basis upon which the retrospectively-rated policyholders can hold Liberty, Highlands, or the Insurers liable for the retention of the 1993 and 1994 surpluses.

■ Even if the right had vested earlier as Butler and Bryan contend, we nevertheless hold that the prescribed statutory remedies within the statute are exclusive and that Butler and Bryan's causes of action would be barred. When a property right is created by statute, the prescribed statutory remedies are exclusive and cannot be expanded by means of the common law or a statute of general application. *See Texas Catastrophe Property Ins. Ass'n v. Council of Co–Owners of Saida II Towers Condominium Ass'n,* 706 S.W.2d 644, 646 (Tex.1986); *see also Employees Retirement Sys. v. Blount,* 709 S.W.2d 646, 647 (Tex.1986) (holding where a cause of action is derived from statute, not common law, statutory provisions are mandatory, exclusive and must be complied with in all respects). Furthermore, we note the Code provides that "[t]he pass-through allowances authorized in Subsections (d) and (e) hereof *shall be deemed exclusive* subsequent to the effective date of this article." Tex. Ins.Code Ann. art. 5.76–2, § 4.04(q) (repealed) (emphasis added). Although the provision further states that other methods utilized prior to the effective date may be deemed valid in some circumstances, we believe that this language nevertheless supports our holding that any property right an insured might have to a portion of the Facility's surplus was intended to be prospectively limited in scope to the confines of the statute. We therefore believe that, even if the policyholders' right to the allowances vested sometime before the Department's rule and order, the remedy prescribed by the statute is exclusive.

Despite the statutory language directing the Department to set the appropriate allowances, Butler and Bryan nevertheless argue that the insurance companies easily could have and should have paid all the eligible policyholders the correct pass-through allowances anyway, despite the Department's inaction. They contend that the statutory language necessarily prescribes a single, uncomplicated, and self-evident formula for computing the pass-through allowances and that the Department's inaction was of no real consequence because the duty it was to perform was purely ministerial and non-discretionary in nature. We disagree.

■ Evidence in the record indicates that there were several different elaborate formulas available for calculating the pass-through allowance. Indeed, there was significant debate regarding which formula was most appropriate. Even if it were true that the method for computing the pass-through was self-evident, requiring the Insurers to act unilaterally and to immediately compute and refund the surplus (or assess the deficit) would render meaningless the portion of the statute directing the Department to set the appropriate pass-through allowance. This we cannot do. It is a well-established rule of statutory construction that every word included in a statute has a purpose and that every word excluded was excluded for a reason. *See Cornyn v. Universe Life Ins. Co.,* 988 S.W.2d 376, 379 (Tex.App.—Austin 1999, no pet. h.) (*citing Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d, 535, 540 (Tex. 1981)). Butler and Bryan urge us to give no meaning to the words delegating to the Department the duty of setting the appropriate allowance. We therefore reject this argument.

■ Having held that there is no vested property right to Facility surplus amounts until the Department determines and announces the applicable allowance, we now address Butler and Bryan's contention that the Department should have

nevertheless been compelled to pay the policyholders interest on the allowances. Nothing in the statute suggests that the legislature intended the policyholders to receive interest. As the Insurance Commissioner noted in the 1997 order, the Code does not authorize the granting of interest income on the surpluses rebated to retrospectively-rated policyholders. *See* Order of Tex. Dep't Ins., *Amendments to the Texas Retrospective Rating Plan Manual,* Docket No. 97–0689 (July 21, 1997); *see also* Tex. Ins.Code Ann. art. 5.76–2, § 4.04(e) (amended 1991). Had the legislature intended for the Department to include interest along with the pass-through allowances, it could have provided for such. Indeed, where the legislature intended for interest to be a remedy elsewhere in the statute, it explicitly so provided.[7]

The true source of Butler and Bryan's frustration, we believe, is the Department's four-year delay in recalculating the pass-through allowance after discovering the surplus, as well as its refusal to order the payment of interest on those amounts. To the extent that there was any recognizable right to compel a refund absent any action by the Department, the proper avenue for relief was the one provided for by both the Insurance Code and the Administrative Procedure Act. *See* Tex. Ins.Code Ann. art. 1.04(a) (West Supp.1999); Tex. Gov't Code Ann. § 2001.038 (West Supp. 1999). Butler and Bryan were free to participate in the rulemaking proceedings and seek judicial review of the Department's rules and implementing orders. Butler and Bryan chose not to take advantage of these procedures.

## CONCLUSION

For these reasons, we hold that insurance companies are not liable to their retrospectively-rated policyholders for withholding Facility surplus amounts while awaiting action by the Department as authorized under article 5.76–2, section 4.04(d) and (e) of the Texas Insurance Code. *See* Tex. Ins.Code Ann. (amended 1991). Each of Butler and Bryan's purported causes of action is premised upon the mistaken belief that policyholders are immediately vested with a right to a distinct share of Facility annual surpluses at the moment the Insurers receive it from the Facility and that the Insurers are liable for any delay. As we have stated, the amount of the allowance and the right to receive it are dependent upon the Department's action as authorized by statute.

Even if we accept as true all of Butler and Bryan's material factual allegations, we still hold that Butler and Bryan failed to plead a viable cause of action upon which relief could be granted. *See Sorokolit v. Rhodes,* 889 S.W.2d 239, 240 (Tex. 1994) (holding appellate court must accept as true all material factual allegations set forth by respondent when reviewing dismissal based on special exceptions). Because Butler and Bryan's pleadings did not state a cause of action, the trial court did not err in dismissing the entire case. *See Holt,* 946 S.W.2d 602 at 605; *see also Cole,* 864 S.W.2d 563 at 566.

Accordingly, we affirm the trial court's judgment dismissing appellant's claims.

## APPENDIX

| | |
|---|---|
| Aberdeen Insurance Company | Appellee |
| Agricultural Insurance Company | Appellee |
| Alliance of American Insurers | Appellee |
| American Home Assurance Company | Appellee |
| American Casualty Company of Reading | Appellee |
| American Zurich Insurance Company | Appellee |

---

**7.** *For example, section 4.04(g) explicitly permits the Department to collect interest on the deferred assessment of Facility losses on post–1992 claims, whereas section 4.04(f) by implication does not permit the collection of inter-* est on the deferred assessment of Facility losses on pre–1992 claims. *See* Tex. Ins.Code Ann. art. 5.76–2, § 4.04(g),(h) (amended 1991).

| | |
|---|---|
| American and Foreign Insurance Company | Appellee |
| American National Fire Insurance Company | Appellee |
| American Alliance Insurance Company | Appellee |
| American Protection Insurance Company | Appellee |
| American Employers Insurance Company | Appellee |
| American Economy Insurance Company | Appellee |
| American Motorists Insurance Company | Appellee |
| American Automobile Insurance Company | Appellee |
| American State Insurance Company of Texas | Appellee |
| American States Insurance Company | Appellee |
| American Insurance Association, Inc. | Appellee |
| American Guarantee Liability Insurance Company | Appellee |
| American Manufacturers Mutual Insurance Company | Appellee |
| Amerisure Insurance Company | Appellee |
| Argonaut Insureance Company | Appellee |
| Argonaut-Midwest Insurance Company | Appellee |
| Argonaut-Southwest Insurance Company | Appellee |
| Associated Indemnity Corporation | Appellee |
| Association Casualty Insurance Company | Appellee |
| Assurance Company of America | Appellee |
| Atlantic Insurance Company | Appellee |
| Atlantic Mutual Insurance Companies | Appellee |
| Bankers Standard Insurance Company | Appellee |
| Birmingham Fire Insurance Company of Pennsylvania | Appellee |
| Bituminous Fire & Marine Insurance Company | Appellee |
| Bituminous Casualty Corp. | Appellee |
| Boston Old Colony Insurance Company | Appellee |
| Casualty Insurance Company of Texas | Appellee |
| Century Indemnity Company | Appellee |
| Chubb Indemnity Insurance Company | Appellee |
| Chubb Lloyds Insurance Company of Texas | Appellee |
| CIGNA Insurance Company of Texas | Appellee |
| CIGNA Insurance Company | Appellee |
| CIGNA Fire Underwriters Insurance Company | Appellee |
| CIGNA Property and Casualty Insurance Company | Appellee |
| Cincinnati Insurance Company | Appellee |
| Commercial Insurance Company of Newark | Appellee |
| Commerce and Industry Insurance Company | Appellee |
| Commercial Union Insurance Company | Appellee |
| CUMIS Insurance Society, Inc. | Appellee |
| Economy Preferred Insurance Company | Appellee |
| Economy Fire & Casualty Company | Appellee |
| Economy Premier Insurance Company | Appellee |
| Electric Mutual Liability Insurance Company | Appellee |
| EMCASCO Insurance Company | Appellee |
| Employers Fire Insurance Company | Appellee |
| Employers Insurance of Wausau–A Mutual Company | Appellee |
| Employers Mutual Casualty Company | Appellee |
| Fairmont Insurance Company | Appellee |
| Farmington Casualty Company | Appellee |
| Farmland Mutual Insurance Company | Appellee |
| Federal Insurance Company | Appellee |
| Fidelity & Casualty Insurance Company | Appellee |
| Fidelity and Guaranty Insurance Underwriters, Inc. | Appellee |
| Fire and Casualty Insurance Company of Connecticut | Appellee |
| Fireman's Fund Insurance Company of Texas | Appellee |
| Fireman's Fund Insurance Company | Appellee |
| Fireman's Fund Insurance Company of Wisconsin | Appellee |
| First National Insurance Company of America | Appellee |
| Fremont Indemnity Company | Appellee |
| Frontier Insurance Company | Appellee |

| | |
|---|---|
| GAN National Insurance Company | Appellee |
| GAN Anglo–American Insurance Company | Appellee |
| General Insurance Company of America | Appellee |
| General Accident Insurance Company of America | Appellee |
| Globe Indemnity Company | Appellee |
| Granite State Insurance Company, Illinois National Insurance Co. | Appellee |
| Great Northern Insurance Company | Appellee |
| Great American Insurance Company | Appellee |
| Gulf Group Lloyds | Appellee |
| Gulf Insurance Company | Appellee |
| Hartford Accident & Indemnity Co. | Appellee |
| Hartford Casualty Insurance Company | Appellee |
| Hartford Fire Insurance Company | Appellee |
| Hartford Insurance Company of the Midwest | Appellee |
| Hartford Lloyds Insurance Company | Appellee |
| Hartford Underwriters Insurance Company, a New York Underwriters Insurance Company | Appellee |
| Highlands Insurance Company | Appellee |
| Highlands Underwriters Insurance Company | Appellee |
| Houston General Insurance Company | Appellee |
| Indemnity Insurance Company of North America | Appellee |
| Industrial Indemnity Company | Appellee |
| Insurance Company of North America | Appellee |
| International Insurance Company | Appellee |
| Kansas City Fire & Marine Insurance Company | Appellee |
| Liberty Mutual Insurance Company | Appellee |
| Liberty Insurance Corporation | Appellee |
| Liberty Mutual Fire Insurance Company | Appellee |
| Lumbermens Mutual Casualty Company | Appellee |
| Lumbermen's Underwriting Alliance | Appellee |
| Maryland Insurance Company, f/k/a American General Fire & Casualty Company | Appellee |
| Maryland Casualty Company | Appellee |
| Michigan Mutual Insurance Company | Appellee |
| Mid–Continental Casualty Company | Appellee |
| Middlesex Insurance Company | Appellee |
| National Surety Corporation | Appellee |
| National American Insurance Company | Appellee |
| National Union Fire Insurance Co. of Pittsburgh, PA | Appellee |
| National Fire Insurance Company of Hartford | Appellee |
| Nationwide Agribusiness Insurance Company | Appellee |
| Nationwide Mutual Insurance Company | Appellee |
| Nationwide Indemnity Insurance Company | Appellee |
| Nationwide Property & Casualty Insurance Company | Appellee |
| Nationwide Mutual Fire Insurance Company | Appellee |
| New England Reinsurance Corporation | Appellee |
| New England Insurance Company | Appellee |
| New York, Fireman's Insurance Company of Newark, New Jersey | Appellee |
| New Hampshire Insurance Company | Appellee |
| Newark Insurance Company | Appellee |
| Niagara Fire Insurance Company | Appellee |
| Nichido Fire/Marine Insurance Co., Ltd. (U.S.Branch) | Appellee |
| Northbrook National Insurance Company | Appellee |
| Northbrook Property and Casualty Insurance Company | Appellee |
| Northbrook Indemnity Company | Appellee |
| Northern Insurance Company of New York | Appellee |
| Northwestern Pacific Indemnity Company | Appellee |
| Old Republic Insurance Group | Appellee |
| Pacific Employers Insurance Company | Appellee |
| Pacific Indemnity Company | Appellee |
| Pennsylvania, Continental Casualty Company | Appellee |

| | |
|---|---|
| Pennsylvania General Insurance Company | Appellee |
| Petrosurance Casualty Company | Appellee |
| Potomac Insurance Company of Illinois | Appellee |
| Preferred Risk Mutual Insurance Company | Appellee |
| Property & Casualty Insurance Company of Hartford | Appellee |
| Reliance National Indemnity Company | Appellee |
| Reliance Lloyds | Appellee |
| Reliance National Indemnity Company | Appellee |
| Reliance Insurance Company | Appellee |
| Republic Franklin Insurance Company | Appellee |
| Royal Insurance Company of America | Appellee |
| Royal Indemnity Company | Appellee |
| Safeco Insurance Company of America | Appellee |
| Safeguard Insurance Company | Appellee |
| Scottsdale Indemnity Company | Appellee |
| Security Insurance Company of Hartford | Appellee |
| Security Insurance Company of Hartford | Appellee |
| Select Insurance Company | Appellee |
| Sentry Insurance–A Mutual Company | Appellee |
| St. Paul Mercury Insurance Company | Appellee |
| St. Paul Fire and Marine Insurance Company | Appellee |
| St. Paul Guardian Insurance Company | Appellee |
| Sumitomo Marine & Fire Insurance Company Limited (U.S.Branch) | Appellee |
| Sun Insurance Office of America, Inc. | Appellee |
| Texas Pacific Indemnity Company | Appellee |
| Texas Department of Insurance | Appellee |
| The Nippon Fire and Marine Insurance Company, Ltd., U.S. Branch, incorrectly sued as Nippon Fire/Marine Insurance Company, Ltd. | Appellee |
| The Automobile Insurance Company of Hartford, Connecticut | Appellee |
| The Standard Fire Insurance Company | Appellee |
| The American Insurance Company | Appellee |
| The Charter Oak Fire Insurance Company | Appellee |
| The North River Insurance Company | Appellee |
| The Phoenix Insurance Company | Appellee |
| The Travelers Indemnity Company | Appellee |
| The Travelers Insurance Company | Appellee |
| The Travelers Indemnity Company of America | Appellee |
| The Glen Falls Insurance Company | Appellee |
| The Home Insurance Company, f/k/a City Insurance Company, Home Indemnity Company, Home Insurance Company, and Home Insurance Company of Indiana | Appellee |
| The Travelers Indemnity Company of Illinois | Appellee |
| The St. Paul Insurance Company | Appellee |
| The Travelers Indemnity Company of Connecticut, The Continental Insurance Company | Appellee |
| The Insurance Company of the State of Pennsylvania | Appellee |
| The Connecticut Indemnity Company | Appellee |
| TIG American Specialty Insurance Company, f/k/a Chilton Insurance Company | Appellee |
| TIG Insurance Company, f/k/a Transamerica Insurance Company | Appellee |
| TIG Premier Insurance Company, f/k/a Transamerica Premier Insurance Company | Appellee |
| TIG Insurance Company of Texas, f/k/a Transamerica Insurance Company of Texas | Appellee |
| Tokio Marine & Fire Insurance Company | Appellee |
| Transcontinental Insurance Company | Appellee |
| Transportation Insurance Company | Appellee |
| Travelers Casualty and Surety Company of America, f/k/a Aetna Casualty & Surety Company of America | Appellee |
| Travelers Casualty and Surety Company, f/k/a Aetna Casualty and Surety Company | Appellee |

| | |
|---|---|
| Travelers Casualty and Surety Company of Illinois, f/k/a Aetna Casualty & Surety Company of Illinois | Appellee |
| Trumbull Insurance Company | Appellee |
| Twin City Fire Insurance Company | Appellee |
| United States Fidelity and Guaranty Company | Appellee |
| United States Fire Insurance Company | Appellee |
| United Pacific Insurance Company | Appellee |
| Utica National Insurance Company of Texas | Appellee |
| Utica Mutual Insurance Company | Appellee |
| Valiant Insurance Company | Appellee |
| Valley Forge Insurance Company | Appellee |
| Vanliner Insurance Co. | Appellee |
| Vigilant Insurance Company | Appellee |
| Virginia Surety Company | Appellee |
| Wausau Business Insurance Company | Appellee |
| Wausau Underwriters Insurance Company | Appellee |
| Westchester Fire Insurance Company | Appellee |
| Yasuda Fire & Marine Insurance Company of America | Appellee |
| Zurich Insurance Company | Appellee |