Opinion issued September 22, 2005












     





In The
Court of Appeals
For The
First District of Texas




NOS. 01-04-00101-CV
          01-04-00484-CV




ROBERT ALPERT, DANRO CORPORATION, and ALBA
CORPORATION, Appellants

V.

CRAIN, CATON & JAMES, P.C., DARLENE PAYNE SMITH and
SHARON B. GARDNER, Appellees




On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2003-47342




O P I N I O N
          A law firm moved to dismiss this case because Texas law does not recognize
a tort action brought against a lawyer by a party opposed to that lawyer’s client in
litigation. The party responds that he properly pleaded a recognized exception to the
general rule. The trial court dismissed the case on special exceptions, and awarded
the law firm approximately $13,000 in attorney’s fees as a sanction. We agree with
the trial court that the facts as pleaded do not weather an attack by special exceptions,
and conclude that the trial court did not abuse its discretion in awarding sanctions. 
We therefore affirm. Facts
          Appellants, Robert Alpert, Danro Corporation, and Alba Corporation
(collectively “Alpert”), sued appellees, Crain, Caton & James, P.C., Darlene Payne
Smith, and Sharon B. Gardner (collectively “Crain Caton”), in connection with Crain
Caton’s legal representation of Alpert’s former attorney, Mark R. Riley.


 Alpert
alleges that Crain Caton conspired with Riley to defraud Alpert, and both aided and
 abetted in the breach of, and tortiously interfered with, Riley’s fiduciary duty to
Alpert. 
          Riley is Alpert’s former attorney, having assisted him from June 1994 through
1998 in the administration of his business and legal affairs. Among other duties,
Riley acted as legal counsel to various businesses in which Alpert had an interest and
to several trusts Alpert established for the benefit of his children. The relationship
between Alpert and Riley soured in 1998, and Riley’s professional dealings with
Alpert ended. Riley sued Alpert in probate court, and Alpert counterclaimed against
Riley (“the trust litigation”). Riley hired the Crain Caton law firm to represent him
in the trust litigation and, perhaps, during events immediately preceding it.


 
          Alpert thereafter brought this district court action against Crain Caton. In this
case, Alpert alleges that Crain Caton conspired with Riley to defraud Alpert, and both
aided and abetted, and tortiously interfered with, Riley’s fiduciary duty to Alpert by
the following: (1) concealing Riley’s malpractices and breaches of fiduciary duty;
(2) filing frivolous lawsuits against Alpert in probate court; and (3) disparaging
Alpert’s reputation in the business community. Alpert does not allege that Crain
Caton represented him. Rather, he acknowledges that Crain Caton represented Riley. 
Alpert did not name Riley as a defendant in this litigation against Crain Caton, but
instead refers to Riley as a co-conspirator.
          In January 2004, the trial court granted Crain Caton’s special exceptions and
dismissed the case, holding that Alpert “failed to set forth a claim or plead a cause of
action against [Crain Caton] recognized under Texas law.” In April 2004, the trial
court granted Crain Caton’s motion for sanctions, ordering Alpert to pay sanctions
of $12,831.56 for Crain Caton’s attorney’s fees and expenses. 
The Dismissal Order
          In response to Crain Caton’s special exceptions, Alpert amended his pleadings
several times, and announced to the trial court that he stood on his fourth amended
petition. Alpert’s petition—referring to Riley as “Riley” and to Crain Caton as “the
Defendants”—alleges the following:
The acts and/or omissions of Riley, the fiduciary include, but are not
limited to the following:
 
          a.       Appropriating proprietary, confidential information
protected by the attorney-client privilege and the attorney
work product privilege and utilizing that information to
make scandalous representations to the Internal Revenue
Service and perhaps to other governmental entities. This
action amounted to self-dealing in that Riley was interested
in collecting monies from the Internal Revenue Service for
making complaints about his clients and also to pressure
Alpert into paying money to him and the Defendants. The
Defendants have stated that they only want money paid to
them and to Riley in order for Riley to cease this
inappropriate activity;
 
          b.       By turning Alpert over to the Internal Revenue Service and
perhaps other governmental entities, Riley and the
Defendants knew that Riley was breaching his fiduciary
duty of “perfect fairness” on the part of an attorney to his
clients;
 
          c.       With the assistance of the Defendants, Riley did not advise
the Plaintiffs of the actions that he was taking with the
proprietary and confidential information thereby aiding and
abetting Riley to breach the duty of discretion, the duty of
loyalty and the duty to make full disclosure of material
facts to his clients;
 
          d.       By attempting to blackmail the Plaintiffs into paying
money to them, the Defendants aided and abetted Riley in
breaching his duty of loyalty to the Plaintiffs and his duty
to place the interest of the Plaintiffs above his own. Riley
and the Defendants used this as an advantage of their
personal positions to gain a benefit for themselves at the
expense of the Plaintiffs/beneficiaries;
 
          e.       The Defendants aided and abetted Riley in a conflict of
interest wherein they allowed him to continue to sue the
Plaintiffs and to make claims against the Plaintiffs utilizing
confidential and proprietary information which Riley
gained from the attorney-client privilege and from his
attorney work product while representing the Plaintiff in
order to extract attorney’s fees for the Defendants and so
called “trustee fees” for Riley;
 
          f.       The Defendants aided and abetted Riley in breaching his
fiduciary duty of making a full and accurate confession of
all his fiduciary activities, transaction, profits and mistakes
all of which is paramount to fraudulent concealment. The
Defendants aided and abetted Riley in withholding and
concealing the fact that he was turning Alpert over to
government entities in order to obtain monies for himself
and the Defendants;
 
          g.       The Defendants aided and abetted Riley in an unlawful
civil conspiracy by filing lawsuits, complaints and other
allegations utilizing information and documents learned
and obtained from a confidential relationship in order to
“shakedown” the Plaintiffs so that monies would be paid to
the Defendants and to Riley;
 
          h.       The Defendants aided and abetted Riley in making
statements such as there were never any loans by Alpert to
the Trusts when Riley and the Defendants knew that such
statements were false because Riley noted in his own
handwriting in his notes as a fiduciary to the Plaintiffs from
1994 through 1998 that loans in fact were made. Again,
the Defendants did this in order to pressure Alpert into
paying them money and Riley money;
 
          i.        The Defendants aided and abetted Riley in suing and
attacking the Plaintiffs with respect to the Daniel Alpert
Trust, the Roman Alpert Trust, The 1996 Childrens’ Trust
and the Alpert Family Charitable Remainder Unitrust and
the Alpert Family Foundation Trust by stating that other
people had engaged in wrong doing [sic] with respect to
the securities trades of these Trusts when it was known and
proved through Riley’s own handwriting that he was aware
of all the trades, authorized the trades and in all situations,
advised that the trades should be made. Again, the
Defendants aided and abetted Riley in taking confidential
information and information protected by the attorney-client privilege to pressure the Plaintiffs into paying the
Defendants money;
 
          j.        The Defendants aided and abetted Riley in breaching his
fiduciary duties to the Plaintiffs by diverting more than
Ninety Five Thousand Dollars ($95,000.00) of income tax
returns from the Internal Revenue Service which were due
to the Trusts and taking a substantial amount of that money
and paying it to Riley and the Defendants;
 
          k.       The Defendants knew that Riley had directed Larry St.
Martin to book the monies forwarded by Alpert to the
Trusts as loans and not gifts, yet they aided and abetted
Riley to claim that the loans were gifts, thereby subjecting
Alpert to Internal Revenue Service gift tax. All of this was
done in an effort to force Alpert into paying money to
Riley and the Defendants; and,
 
          l.        The Defendants knew that Riley had failed [to] timely and
properly file tax returns for the Daniel Alpert Trust, The
Roman Alpert Trust and the Alpert Family Charitable
Trust. Nonetheless, they aided and abetted Riley in
claiming that he had not breached his fiduciary duties in
this regard when they knew that he had.
          Crain Caton filed special exceptions, contending that Alpert’s petition fails to
state any cause of action against it. Specifically, Crain Caton excepted on the basis
that Alpert’s petition “fails to state a claim under Texas law for which relief can be
granted” because “[a]ll of the conduct made the basis of [Alpert’s] claims occurred
during the discharge of [Crain Caton’s] duties in representing their client, [Riley], and
is absolutely protected from the liability claims asserted by Plaintiffs in this case.”


 
The trial court granted Crain Caton’s special exceptions and dismissed the case,
concluding that Alpert “failed to set forth a claim or plead a cause of action against
[Crain Caton] recognized under Texas law.” 
Discussion
Special Exceptions
          A special exception is a proper method to determine whether a plaintiff has
pleaded a cause of action. Butler Weldments Corp. v. Liberty Mut. Ins. Co., 3 S.W.3d
654, 658 (Tex. App.—Austin 1999, no pet.). When special exceptions are sustained,
the pleader may either amend the petition or, as Alpert did here, refuse to amend and
challenge the ruling on appeal. Detenbeck v. Koester, 886 S.W.2d 477, 479 (Tex.
App.—Houston [1st Dist.] 1994, no writ).  
          We review a trial court’s dismissal of a case upon special exceptions for failure
to state a cause of action as an issue of law, using a de novo standard of review. 
Sanchez v. Huntsville Indep. Sch. Dist., 844 S.W.2d 286, 288 (Tex. App.—Houston
[1st Dist.] 1992, no writ). We accept all of the plaintiff’s material factual allegations
and all reasonable inferences from those allegations as true. Sorokolit v. Rhodes, 889
S.W.2d 239, 240 (Tex. 1994).
Attorney Liability to Non-Client Third Parties
            At common law, the rule of privity limits an attorney’s liability to those in
privity with the attorney. McCamish, Martin, Brown & Loeffler v. Appling Interests,
991 S.W.2d 787, 792 (Tex. 1999). An attorney in Texas therefore is not liable to non-client third parties for legal malpractice. Id; see also Barcelo v. Elliott, 923 S.W.2d
575, 577 (Tex. 1996). The common law rule does not apply to all causes of action
against an attorney. If an independent duty to the non-client exists, “based on the
professional [attorney’s] manifest awareness of the non-client’s reliance on the
misrepresentation and the professional’s intention that the non-client so rely,” then
an attorney may be liable for negligent or fraudulent misrepresentation. See
McCamish, 991 S.W.2d at 792 (allowing a cause of action for negligent
misrepresentation by a non-client under the Restatement (Second) of Torts §552).
          Perhaps as an offshoot of its privity jurisprudence, Texas case law has
discouraged lawsuits against an opposing counsel if the lawsuit is based on the fact
that counsel represented an opposing party in a judicial proceeding. Bradt v. Sebek,
14 S.W.3d 756, 766 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). An attorney
has a duty to zealously represent his clients within the bounds of the law. Bradt v.
West, 892 S.W.2d 56, 71-72 (Tex. App.—Houston [1st Dist.] 1994, writ denied). In
fulfilling this duty, an attorney has the right to interpose defenses and pursue legal
rights that he deems necessary and proper, without being subject to liability or
damages. Id. If an attorney could be held liable to an opposing party for statements
made or actions taken in the course of representing his client, he would be forced
constantly to balance his own potential exposure against his client’s best interest. See
id. Such a conflict hampers the resolution of disputes through the court system and
the attainment of justice. Thus, to promote zealous representation, courts have held
that an attorney is “qualifiedly immune” from civil liability, with respect to
non-clients, for actions taken in connection with representing a client in litigation.
See, e.g., Butler v. Lilly, 533 S.W.2d 130, 131-34 (Tex. App.—Houston [1st Dist.]
1976, writ dism’d).
          This qualified immunity generally applies even if conduct is wrongful in the
context of the underlying lawsuit. Renfroe v. Jones & Assocs., 947 S.W.2d 285, 288
(Tex. App.—Fort Worth 1997, writ denied) (“Under Texas law, attorneys cannot be
held liable for wrongful litigation conduct.”). For example, a third party has no
independent right of recovery against an attorney for filing motions in a lawsuit, even
if frivolous or without merit, although such conduct is sanctionable or contemptible
as enforced by the statutory or inherent powers of the court. West, 892 S.W.2d at 72. 
Courts have refused to acknowledge an independent cause of action in such instances
“because making motions is conduct an attorney engages in as part of the discharge
of his duties in representing a party in a lawsuit.” Id. (holding no cause of action
existed for making motion for contempt because attorneys do not owe duty to be
correct in legal arguments—“even if the . . . motion for contempt had been meritless,
their conduct in so moving, coming as it did in the discharge of their duties in
representing a party in a lawsuit, would still not be actionable.”). Thus, an attorney’s
conduct, even if frivolous or without merit, is not independently actionable if the
conduct is part of the discharge of the lawyer’s duties in representing his or her client. 
Id. at 74; Chapman Children’s Trust v. Porter & Hedges, L.L.P., 32 S.W.3d 429, 441
(Tex. App.—Houston [14th Dist.] 2000, pet. denied). The immunity focuses on the
type of conduct, not on whether the conduct was meritorious in the context of the
underlying lawsuit. Renfroe, 947 S.W.2d at 288.
          As the Texas Supreme Court observed in McCamish, a lawyer’s protection
from liability arising out of his representation of a client is not without limits. See
McCamish, 991 S.W.2d at 793-94; see also Toles v. Toles, 113 S.W.3d 899, 912-13
(Tex. App.—Dallas 2003, no pet.). For example, a cause of action could exist against
an attorney who knowingly commits a fraudulent act outside the scope of his legal
representation of the client. See Likover v. Sunflower Terrace III, Ltd., 696 S.W.2d
468, 472 (Tex. App.—Houston [1st Dist.] 1985, no writ). If a lawyer participates in
independently fraudulent activities, his action is “foreign to the duties of an attorney.” 
 Id. (quoting Poole v. Houston & T.C. Ry. Co., 58 Tex. 134, 137 (1882)). A lawyer
thus cannot shield his own willful and premeditated fraudulent actions from liability
simply on the ground that he is an agent of his client. See id. 
          On appeal, Alpert contends that, despite the general rule that a lawyer cannot
be sued by a non-client for actions taken within the scope of the attorney’s
representation of his client, he asserts a valid cause of action against Crain Caton,
because the petition (1) alleges that Crain Caton committed wrongful acts outside of
litigation; and (2) alleges that such acts constitute fraud or a conspiracy to commit
fraud or breach of fiduciary duty. 
1. Aiding and Abetting Breach of Fiduciary Duty
          As set forth above, the majority of Alpert’s petition alleges that Riley breached
his fiduciary duty and that Crain Caton assisted him in doing so. Alpert thus contends
that he alleges a valid cause of action against Crain Caton for aiding and abetting
Riley’s breach of fiduciary. Alpert relies on Toles and Querner v. Rindfuss, 966
S.W.2d 661 (Tex. App.—San Antonio 1998, pet. denied), for his contention that
Texas has expanded a lawyer’s liability to non-clients to include aiding and abetting
his client’s breach of fiduciary duty. 
          Alpert’s contention is without merit. In Querner, the defendant was the
attorney for a trust executrix. The executrix misappropriated funds, breached her
duties, and committed other bad acts. The beneficiaries directly sued the lawyer-defendant. The trial court held that the beneficiaries could sue for breach of fiduciary
duty only if they successfully proved that the lawyer-defendant had engaged in fraud
and that he was in privity with them or otherwise directly owed them a fiduciary duty. 
Id. at 670. Here, Alpert does not allege that Crain Caton represented him, nor that
Crain Caton made representations to him that it was acting as his attorney, nor that
Crain Caton (as opposed to Riley) owed Alpert any legal or fiduciary duty—all facts
distinguishable from those recited in Querner to support the existence of a potential
cause of action.
          In Toles, the defendant was a law firm for the husband in a divorce proceeding. 
The wife sued the defendant claiming that it had acted wrongfully during the divorce
litigation. The trial court held that the wife’s claims against the defendant arose from
its representation of the husband, and thus the wife had no viable claims against the
defendant “unless those claims amount to assertions of fraud or conspiracy to
defraud.” 113 S.W.3d at 911. Although the wife did not specifically state a claim for
fraud, the husband did not file any special exceptions to her petition. As a result, the
court liberally construed her pleadings, and held that the wife’s claim for aiding and
abetting a breach of fiduciary duty “could arguably” involve fraudulent conduct.
          Here, the acts that Alpert alleges in his petition to support his claim of aiding
and abetting a breach of fiduciary duty occurred during Crain Caton’s representation
of Riley. Unlike the defendant in Toles, Crain Caton specially excepted to Alpert’s
pleadings. Despite opportunities to replead, Alpert does not allege that Crain Caton
committed any acts or misrepresentations, independent of its representation of Riley,
upon which he justifiably relied. Absent any allegation that Crain Caton committed
an independent tortious act or misrepresentation, we decline Alpert’s invitation to
expand Texas law to allow a non-client to bring a cause of action for “aiding and
abetting” a breach of fiduciary duty, based upon the rendition of legal advice to an
alleged tortfeasor client. The trial court thus did not err in dismissing this claim. See
McCamish, 991 S.W.2d at 793–94 (holding that adoption of section 552 of the
Restatement does not threaten lawyers with almost unlimited liability, because it
applies to a narrow class of potential claimants and requires that any claimant
justifiably rely on the alleged negligent misrepresentation).
2. Tortious Interference With Fiduciary Duty
          Alpert concedes in this appeal that no Texas court has recognized a tortious
interference with fiduciary duty cause of action. He nonetheless contends that we
should adopt such an approach, as it is corollary to his other claims. The acts that
Alpert alleges in his petition to support his claim of tortious interference with a
fiduciary duty are nothing more than Crain Caton’s rendition of legal advice to Riley. 
Given the facts Alpert alleges, we decline to recognize a cause of action for tortious
interference with fiduciary duty. The trial court therefore did not err in dismissing
this claim. 
3. Conspiracy to Defraud


 
          To determine whether Alpert alleges a valid conspiracy to defraud action
against Crain Caton, we examine the nature of the complained-of conduct. In his
appeal, Alpert contends the following allegations support his conspiracy to defraud
claim: Crain Caton assisted Riley in denying that he served as legal counsel for
Alpert; Crain Caton filed numerous lawsuits against Alpert on Riley’s behalf in order
to conceal improper actions and to deflect attention away from Riley’s own wrongful
conduct; Riley, while represented by Crain Caton, alleged that Alpert committed bad
acts in order to force Alpert to accede to demands for money; Crain Caton aided
Riley in concealing the fact that he had reported Alpert to the IRS; Crain Caton aided
Riley in misusing confidential information by filing lawsuits, complaints and other
allegations; Crain Caton aided Riley in his falsely stating that some of the trusts had
no loans; and Crain Caton aided Riley in his claims that certain loans of the trusts
were taxable gifts.
          We hold that none of these alleged acts constitutes conduct “foreign to the
duties of an attorney” in the representation of a client. Instead, the complained-of
actions involve the filing of lawsuits and pleadings, the providing of legal advice
upon which the client acted, and awareness of settlement negotiations—in sum, acts
taken and communications made to facilitate the rendition of legal services to Riley. 
Such acts fall within the context of Crain Caton discharging its duty to represent
Riley and are not the basis for an actionable fraud claim against attorneys for whom
Alpert alleges neither (1) any legal privity, nor (2) any independent duty to Alpert,
together with justifiable reliance upon any representation or act made by Crain Caton. 
See White v. Bayless, 32 S.W.3d 271, 274–76 (Tex. App.—San Antonio 2000, pet.
denied) (holding no cause of action exists in petition claiming that opposing attorney
conspired to defraud him by filing numerous pleadings, attempting to evict him, filing
false proof of claim in bankruptcy court, and using scurrilous language); Chapman
Children’s Trust, 32 S.W.3d at 440–43 (holding that allegations that opposing
attorney refused to provide documentation, denied knowledge of facts, filed motions,
pushed settlement, and concealed facts did no more than demonstrate that attorney
attempted to negotiate smaller settlement and did not raise issue of fraud); Renfroe,
947 S.W.2d at 288–89 (holding no cause of action against attorney for his
participation in filing writ of garnishment with inaccurate facts); see also McCamish,
991 S.W.2d at 795 (noting that limitations exist upon duty of counsel to non-clients). 
We therefore hold that the trial court did not err in dismissing this claim. The Sanctions Order
          In February 2004, Crain Caton moved for sanctions against Alpert under
Chapter 10 of the Civil Practice and Remedies Code and Rule 13 of the Texas Rules
of Civil Procedure. See Tex. Civ. Prac. & Rem. Code Ann. §§ 10.001, 10.002
(Vernon 2002); Tex. R. Civ. P. 13. The trial court conducted a hearing and granted
Crain Caton’s motion, ordering Alpert to pay sanctions of $12,831.56 for Crain
Caton’s attorney’s fees and expenses. On April 8, 2004—the day the trial court
signed its sanctions order—Alpert requested that the trial court enter findings of fact
and conclusions of law. The trial court included three particular findings in its
sanctions order, but did not enter any additional findings. 
          Alpert alleges that the trial court erred in granting sanctions because (1) the
trial court did not have plenary power at the time that it issued its sanctions order;
(2) the trial court failed to issue requested findings of facts and conclusions of law in
support of the sanctions order; and (3) it was an abuse of discretion to award
sanctions. 
Plenary Power
          Alpert contends that the trial court had no power to sign the April 8, 2004
sanctions order because more than thirty days had elapsed since it had signed the
January 27, 2004 dismissal order. Whether a court has subject matter jurisdiction is
a question of law, and we therefore review the issue de novo. Tex. Dept. of Parks &
Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004). 
          After signing a final judgment, a trial court retains jurisdiction over a case for
a minimum of thirty days. Tex. R. Civ. P. 329b(d). During this time, the trial court
has plenary power to change its judgment. Check v. Mitchell, 758 S.W.2d 755, 756
(Tex. 1988). A party may extend this period by timely filing an appropriate post-judgment motion. The filing of a motion for new trial under Rule 329b(e) or a motion
to modify, correct or reform the judgment under Rule 329b(g), within the initial
thirty-day period, extends the trial court’s jurisdiction over its judgment up to an
additional seventy-five days, depending on when or whether the court acts on the
motion. Philbrook v. Berry, 683 S.W.2d 378, 379 (Tex. 1985); Tex. R. Civ. P.
329b(c), 329b(e), & 329b(g).
          Here, the trial court signed the dismissal order on January 27, 2004, and thus,
retained jurisdiction over the case for thirty days. See Tex. R. Civ. P. 329b(d). Crain
Caton moved for sanctions on February 25, 2004, within the trial court’s initial thirty-day plenary power. Therefore, the issue before this Court is whether Crain Caton’s
motion for sanctions was a motion to modify the trial court’s January 27, 2004 order
or a new motion. If the former, the trial court retained plenary power; if the latter,
plenary power was lost. See Tex. R. Civ. P. 329b(g).
          “[A] timely filed postjudgment motion that seeks a substantive change in an
existing judgment qualifies as a motion to modify under Rule 329b(g), thus extending
the trial court’s plenary jurisdiction and the appellate timetable.” Lane Bank Equip.
Co. v. Smith S. Equip., Inc., 10 S.W.3d 308, 314 (Tex. 2000). In Lane, the Texas
Supreme Court held that “a motion made after judgment to incorporate a sanction as
a part of the final judgment does propose a change to that judgment. Such a motion
is, on its face, a motion to modify, correct or reform the existing judgment within the
meaning of Rule 329b(g).” Id. at 312. See also In re T.G., 68 S.W.3d 171, 176–77
(Tex. App.—Houston [1st Dist.] 2002, pet. denied) (amended motions for sanctions
extended the trial court’s plenary power over the judgment of dismissal).           Here, Alpert contends that Crain Caton’s motion does not seek the rendition
of a new final judgment because the trial court styled its order, “Order Granting
Sanctions,” and made a handwritten notation deleting the words, “[Order Granting]
Special Exceptions, Order of Dismissal.” Alpert thus contends that Crain Caton
“requested and ultimately obtained a separate and distinct order assessing sanctions.” 
          In its motion for sanctions, and in support for the trial court’s continued
plenary power, Crain Caton cites Texas Rule of Civil Procedure 329b(d). See Tex.
R. Civ. P. 329b(d) (trial court has plenary power to vacate, modify, correct or reform
the judgment within thirty days after the judgment is signed). In its April 8, 2004
sanctions order, the trial court notes that Crain Caton moved for sanctions “within the
time limits of a motion for new trial” and sought “a substantive change and
modification” of the trial court’s dismissal order. The trial court thus viewed the
request as one which sought to modify its order of dismissal to include sanctions. We
hold that Crain Caton’s timely filed postjudgment motion for sanctions sought a
substantive change in an existing judgment and qualifies as a motion to modify under
Rule 329b(g), thus extending the trial court’s plenary jurisdiction. See Lane, 10
S.W.3d at 314.
Findings of Fact and Conclusions of Law
          Alpert next contends that the trial court erred in refusing to make findings of
fact and conclusions of law, and that such error was harmful. Crain Caton responds
that Alpert did not preserve this complaint because Alpert did not file a Rule 297
reminder after the trial court failed to issue any findings of fact or conclusions of
law.


 We agree. See Averyt v. Grande, Inc., 717 S.W.2d 891, 895 (Tex. 1986)
(holding that because reminder not filed, as required by Texas Rule of Civil
Procedure 297, appellant waived argument regarding failure to file findings of fact
and conclusions of law); Employers Mut. Cas. Co. v. Walker, 811 S.W.2d 270, 271
(Tex. App.— Houston [14th Dist.] 1991, writ denied) (holding that party’s failure to
file reminder waived argument). Moreover, the trial court included findings in its
sanctions order, as required by Chapter 10 and Rule 13. See Tex. Civ. Prac. Rem.
Code Ann. § 10.005 (Vernon Supp. 2002); Tex. R. Civ. P. 13. 
Review of the Sanctions Order
          Alpert contends that the trial court abused its discretion in awarding sanctions. 
He does not contend that the attorney’s fees were unreasonable; rather, he alleges that
sanctions are not warranted. We review a trial court’s sanctions order under an abuse
of discretion standard. Laub v. Pesikoff, 979 S.W.2d 686, 693 (Tex. App.—Houston
[1st Dist.] 1998, pet. denied). Our test for abuse of discretion is whether the trial
court acted without reference to any guiding rules and principles. Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241–42 (Tex. 1985). We therefore
will overturn a trial court’s award of sanctions only if it is based on an erroneous view
of the law or a clearly erroneous assessment of the evidence. Home Owners Funding
Corp. of Am. v. Scheppler, 815 S.W.2d 884, 889 (Tex. App.—Corpus Christi 1991,
no writ). 
          Crain Caton moved for sanctions against Alpert and his attorney under Chapter
10 of the Civil Practice and Remedies Code and Rule 13 of the Rules of Civil
Procedure. Tex. Civ. Prac. & Rem. Code Ann. §§ 10.001, 10.002(c) (Vernon
2002); Tex. R. Civ. P. 13. After conducting an evidentiary hearing, the trial court
found sanctions to be appropriate under both provisions. The trial court’s order finds
that (1) Alpert’s original petition asserts frivolous claims; (2) the petition was filed
against Crain Caton on the “eve of trial” in the underlying trust litigation between
Alpert and Riley; and (3) Alpert refused to dismiss the petition despite repeated
requests. The trial court held that these findings “support[] the conclusion that the
suit was filed for improper purposes, including harassment, delay, needless costs and
expense, and the potential for lessening Plaintiffs’ adversary’s zealous and vigorous
representation by his attorneys.” Additionally, the trial court found that Alpert’s
claims are “clearly barred by existing law, have no basis in law or fact, and are not
warranted by a good faith argument for the extension, modification or reversal of
existing law and in light of the record before the Court, [are] groundless and brought
in bad faith or for the purpose of harassment.” 
 Rule 13 Sanctions
          Rule 13 of the Rules of Civil Procedure provides that the signature of an
attorney constitutes a certificate that the pleading, motion, or other paper, to the best
of his knowledge, “is not groundless and brought in bad faith or groundless and
brought for the purpose of harassment.” Tex. R. Civ. P. 13. The rule thus protects
against “groundless” pleadings and motions. For the purposes of the rule, groundless
“means no basis in law or fact and not warranted by good faith argument for the
extension, modification, or reversal of existing law. . . .” Id. 
          No sanctions may be imposed under Rule 13 “except for good cause, the
particulars of which must be stated in the sanctions order.” Id. This requirement to
include particular findings (1) ensures that the trial court is held accountable and
adheres to the standard of the rule; (2) requires the trial court to reflect carefully on
its order before imposing sanctions; (3) informs the offending party of the particular
conduct warranting sanction, for the purpose of deterring similar conduct in the
future; and (4) enables the appellate court to review the order in light of the particular
findings made by the trial court. Rudisell v. Paquette, 89 S.W.3d 233, 237 (Tex.
App.—Corpus Christi 2002, no pet.).
          To refute the trial court’s finding of frivolousness, Alpert relies on several
Texas court of appeals’ decisions that have upheld a party’s lawsuit against an
attorney who represents his adversary in some—albeit limited—circumstances. Like
the trial court, we either do not agree with Alpert’s cited authorities, or we conclude
that they are factually distinguishable. This alone, however, is not a basis for
imposing sanctions. See Laub, 979 S.W.2d at 693 (rule 13 sanctions “cannot become
a weapon used to punish those with whose intellect or philosophic viewpoint the trial
court finds fault. . . . . We cannot allow rule 13 to have a chilling effect on those who
seek change in legal precedent.”). Here, the record and briefing show (1) a relative
paucity of law exists on the causes of action alleged as applied to these or similar
facts; (2) Crain Caton offered no evidence at the sanctions hearing that the petition,
as it is drafted, is factually untrue; and (3) such appellate law that exists, in some
instances, arguably supports Alpert’s claim. We thus hold that Alpert’s unmeritorious
claims were not groundless and that the trial court, therefore, should not have
imposed sanctions under Rule 13. 
          Chapter 10 Sanctions
          Chapter 10 of the Civil Practice and Remedies Code provides that the signing
of a pleading or motion constitutes a certificate by the signatory that, to the best of
the signatory’s knowledge, “the pleading or motion is not being presented for any
improper purpose, including to harass or to cause unnecessary delay or needless
increase in the cost of litigation,” and “each claim, defense, or other legal contention
in the pleading or motion is warranted by existing law or by a nonfrivolous argument
for the extension, modification, or reversal of existing law or the establishment of
new law.” Tex. Civ. Prac. & Rem. Code Ann. § 10.001(1) & (2). Thus, there are
two requirements under Chapter 10: (1) that the claims made in pleadings not be
frivolous; and (2) that the pleadings not be made for an improper purpose. A finding
of either requirement supports the imposition of sanctions. As stated above, Alpert’s
claims were not frivolous. The trial court’s sanction order must thus be supported by
evidence that Alpert filed the petition for an improper purpose. 
          In imposing sanctions under Chapter 10, a trial court is required to specifically
detail the sanctionable conduct in its order. Tex. Civ. Prac. Rem. Code Ann.
§ 10.005 (Vernon Supp. 2004–2005) (“[a] court shall describe in an order imposing
a sanction under this chapter the conduct the court has determined violated Section
10.001 and explain the basis for the sanction imposed”); Rudisell, 89 S.W.3d at 238
(“[t]he use of ‘shall’ in the statute indicates that the requirement for particularity in
the sanction order is mandatory”). We thus look to the trial court’s sanction order,
which finds that Alpert had an improper motive in filing this litigation because it was
filed on the eve of trial in the trust litigation.
          The trial court could take judicial notice of the prior pleadings in this litigation,
establishing that Alpert filed his original petition in this lawsuit on August 26, 2003. 
See Tex. R. Evid. 201; Smith v. Smith, 757 S.W.2d 422, 426 (Tex. App.—Dallas
1988, writ denied) (trial court can take judicial notice of contents of its file with or
without request of party). During the sanctions hearing, Crain Caton established that
the underlying trust litigation was scheduled to go to trial in the early fall. Alpert thus
filed this lawsuit scant weeks before the scheduled trial in the underlying trust
litigation. 
          Alpert’s attorney testified in response that his lawsuit was filed in good faith
because, before he filed the petition, he researched the possibility of the lawsuit, and
his research included consultation with at least one other attorney. During the
sanctions hearing, however, Alpert’s attorney conceded that he did not name Riley
as a defendant—rather, he named only Riley’s attorneys, who presently represented
Riley in the ongoing trust litigation between the parties. Moreover, Crain Caton
introduced evidence that Alpert also had sued the experts designated by Crain Caton
in the underlying trust litigation, as well as the probate court-appointed receiver. The
trial court reasonably could have concluded from these facts that this lawsuit was
filed on the “eve of trial” for an improper purpose “including harassment, delay,
needless costs and expense, and the potential for lessening [Crain Caton’s] zealous
and vigorous representation” of Riley. As the fact finder, the trial judge was entitled
to evaluate the credibility of the testimony and to determine what weight to give it. 
City of Houston v. Jackson, 135 S.W.3d 891, 905 (Tex. App.—Houston [1st Dist.]
2004, no pet.) (citing Cain v. Bain, 709 S.W.2d 175, 176 (Tex.1986)). In this case,
the evidence supports the trial court’s finding.
          The trial court conducted a sanctions hearing, during which both parties
introduced evidence. The trial court included particular findings in its award of
sanctions that are supported by the record. The trial court thus acted with reference
to guiding rules and principles. We therefore hold that it did not abuse its discretion
in imposing sanctions. Conclusion
          We conclude the trial court (1) did not err in dismissing Alpert’s petition upon
special exceptions, and (2) did not abuse its discretion in imposing sanctions under
Chapter 10 of the Civil Practice and Remedies Code. We therefore affirm the
judgment of the trial court. 
 
 

                                                             Jane Bland
                                                             Justice

Panel consists of Justices Hanks, Higley and Bland.